1974-71 United States v. Benton 1974-71 United States v. Benton 1974-71 United States v. Benton 1964-71 Yes, your honor. And again, I would respectfully suggest that that is, you know, had Mr. Benton's lawyer below brought to our attention, we would have addressed it there. I can't speak to specifically why it was not what I can speak to your honor. Counsel, sorry, just before you get to before you get to Hodge, sorry. But you are asking us to review this de novo. You've never argued that defense counsel's failure to bring it to the district court puts us under any other standard of review. I mean, your brief says we argue we review this de novo. Okay. Yes, ma'am. Yes, ma'am. Judge King, I would like to distinguish Hodge in two respects. In Hodge, the pre-sentence report, the criminal history section was divided into two sections. It was an unusual PSR. In Hodge, there was one section that was for exclusively ACCA predicates. There was a second criminal history section for all other criminal convictions. And on collateral review, the government attempted to substitute after Johnson, a conviction that was obtained and located in the criminal history section for non-ACC predicates. And the Fourth Circuit understandably noted that essentially the government was trying to use a latent conviction. By contrast, Mr. Benton's pre-sentence report had one criminal history section that listed all his adult criminal history convictions together. And in paragraph 64, it designated the distribution of crack cocaine as an ACC predicate. And in paragraph 74, it makes clear that he was convicted of four counts of distribution of crack cocaine. Now, I know my opposing counsel suggested that was insufficient notice. As a practical matter, there was no need for the pre-sentence report for Mr. Benton to list all four of the distribution of crack cocaine offenses as separate predicates because he had three other ACC predicates in 1998. I mean, who are we fooling here? At the time, he had seven ACC predicates. So, it didn't really matter if the distribution of crack cocaine was listed as one ACC predicate or four ACC predicates. So, that's one way to distinguish. But in Hodge also, I don't think that distinguishes Hodge at all. This happens all the time, that the government thinks it has enough so it doesn't add additional ones. But I thought we said in Hodge, it doesn't matter. Like either raise it now or even if it's superfluous or you lose the chance to rely on it later. So, you're saying Hodge only applies if the government, I don't know how many, like if there had been three, then Hodge would apply, but because there's four, Hodge doesn't apply. That's your view? I would suggest a more common... No, go ahead. Well, I think we said in Hodge, it absolutely matters because he's not on notice that if he's ever going to contest this, he has to do it right now. And can I just also say that I understand that the district court on habeas did the analysis to make sure that these really were four separate predicates under whatever our five-factor test is. But whenever there's one arrest, that's going to be a question. Are these really separate predicates or not? So I don't think we can just say like, who are we kidding? This is seven. There's a question as to whether it's four or seven. The district court answered it on habeas, but what we said in Hodge is that's not sufficient. It has to be answered on direct review when the burden is on the government and the defendant has a right to counsel, not later on habeas. That was the whole point of Hodge. It was, Your Honor. Let me approach this from a different angle. To what end are we here? What is Mr. Benton's purpose? And I would like to cite the Fourth Circuit's opinion in the United States v. Rumley. We put it in footnote six in our brief. And in Rumley, the Fourth Circuit just last year made clear that Hodge is limited to cases on collateral review. So in Rumley, the district court granted the 2255 based on Johnson, vacated the sentence, and granted a full resentencing. What happened there, Judge Harris? Well, the probation office modified the pre-sentence report and designated another conviction as an ACC predicate that wasn't designated earlier. And the district court gave the exact same ACC sentence. So I guess my question is, to what end is Mr. Benton here? So just hypothetically, if this case was remanded back to the district court, Judge Curry has already found, and I'll point, Your Honor, to Joint Appendix 185 and her order denying Mr. Benton's 2255. Quote, each of the four counts of distribution of crack cocaine is a separate serious drug offense predicate for ACC purposes, unquote. Now, what's the point in kicking this back when she's already made that finding? And, Your Honor, if you look at paragraph 74, please, Judge Harris, don't get caught up on the fact that there was one arrest. If you look at paragraph 74 in his original pre-sentence report, Mr. Benton distributed crack cocaine on four occasions over a four-month period to an undercover law enforcement officer. There's no question those are four separate distributions. The four of them were counted as one. And Hodge undercut all that. And you didn't cite it to the district court. And now you come up here. On the 16-year brief, you say the government respectfully preserves its objection to Hodge. Hodge's analysis conflicts with other circuits that permit the government to rely on convictions listed in the PSR, but not explicitly designated as ACCA predicates. Do you understand that? You're saying it's wrong. And you say you're preserving your objection. You haven't made any objection to Hodge. None objection. Your Honor, the Justice Department originally actually… Well, again, I think that's primarily the responsibility of Mr. Benton. You can argue that it's not controlling. You can argue it's not controlling. But it's arguably controlling. And you were on notice of it. And you contest error in the Brisbane case. And then you didn't bring it to Judge Curry's attention. You keep telling us that it was defense counsel's obligation. But I thought it was long ago established that the United States attorney has to see that justice is done. And you have a wider obligation than defense counsel. You have to tell the judge what the law is. You can tell her that you don't think it's the right law. And you would rather go with other circuits. And you can distinguish it. But you have an obligation to tell them what the law is. You're quite right, Your Honor. And to the extent that occurred, it was an innocent oversight. I'm certain that my colleagues who handled this below would never mistake Judge Curry. But I'll go back to what I said to Judge Harris. It seems like a terrible waste of judicial resources. Well, you see, counsel, I don't really understand that argument either. I mean, you can say that you think that somebody there's just an enormous amount of evidence against somebody, but he was never provided with constitutional rights. But what difference does that make? He's going to go to jail. He's a really, really bad person. We should overlook that. But the law is the law. It gives people rights. We're supposed to follow. Well, let me take a different tact, Judge Monson. I may save everybody time here. Under the concurrent sentence doctrine, I would ask the court to decline to review his ACCA sentence. And it bears repeating that Mr. Denton is serving three separate 420-month sentences for three separate convictions, for a drug trafficking conspiracy, for PWI crack cocaine, and for this ACCA firearm offense. So even if, for some reason, that y'all found the ACCA sentence was infirm, what difference does it make? He's serving two other 420-month sentences. It seems to me that's a very, very, very good reason why the government would not contest the argument here. I mean, I just don't want him to confess error if it doesn't make any difference. Your Honor, like I said earlier, I do think Hodge is distinguishable for this case. Now, granted, it's a fine distinction, but I do think it's distinguishable. But I just go back to what I said to Judge Harris prior. Your Honor, if you think it's distinguishable, then why did you say on appeal that you thought it was wrong? Your Honor, that was the Justice Department. I don't know what your objection was. And you also said, will you acknowledge that one panel of this court can't overrule another panel in a scientific case, as if you wanted us to overrule Hodge. In response, you keep saying something about the Justice Department. We never let you get to it. Is the Justice Department planning to take cert on Hodge? I would have thought the time had come and gone. It is, Your Honor. I couldn't finish my sentence, but my point was the Justice Department initially opposed the court's decision in Hodge. We're not going to seek cert on that. Let me finish, Judge King, please. I'm the U.S. Attorney in the District of South Carolina. Hodge originated in North Carolina. I don't want to speak for them, but we obviously agree that it was wrongly decided. But again, I go back to this. What difference does that make? He's serving three separate 420-month sentences. Can I ask you about that? Can I ask you about this after Judge King? I'm sorry. Yes, ma'am. No, you go, Judge King. I'll remember my question. Hodge was the law, and you all didn't cite it to the district court. And you tell us that you think it's wrong. It was decided in 2018, and you tell us in your brief here in 2021 that you think it's wrong. And the Justice Department didn't file for cert. We know of. Nobody's ever said it did. I haven't personally seen that. But I'm just befuddled. I thought you all were going to come in here and explain that today. Because you confessed error in the Brisbane case, based on Hodge. And I can't see a distinction between the two. They are very close, Your Honor. I can see that Brisbane and this case are very similar. And you confessed error in Brisbane. Judge Harris, do you have a question? Confess before you file this brief. I'm sorry, Judge Harris. Did you have a question? Can you explain that first? I couldn't understand, Judge King. I'm sorry to repeat the question. You confessed error in Brisbane, and it's from, I gather, the same office. And yet you're not confessing error here. Can you explain that? Well, I think in this case, given the fact that Judge Curry, when she denied Mr. Benton's 2255, she specifically said each of the four counts of distribution of crack cocaine is a separate serious drug offense. Why would we concede that, Your Honor? This is such a waste of time. If it goes back, she's not, I mean, it's clear she's already made this analysis. Isn't that a good reason to concede the error? I don't understand why that's a bad reason. From your perspective, that would seem to make a concession pretty much, you know, harmless. Well, what about this? It seems like it would have saved us a lot of time. OK, let me ask you my question about concurrence sentence. It's a discretionary doctrine, right? And this seems like sort of a weird posture for it, because I think we usually justify it by saying it's going to save judicial resources. We don't have to consider the question. But here the district court like already considered it. And so the question is, should we devote enough judicial resources to make sure it was correct? Do you know what I'm saying? Like this issue is in the case. It's too late because nobody raised this before the district court to get it out. You could have asked the district court, don't bother figuring out whether these are sufficient predicates. We don't need them because of the concurrence sentence. But you didn't. And so I'm a little uneasy about the idea that we should use this doctrine that's designed to sort of save judicial resources or conserve judicial resources in this context when there seems to be sort of a big honking error hanging out there. And you're telling us now is the time to sort of conserve our resources and not correct it. I understand where you're coming from, Judge Harris. I would ask you to consider both these arguments together. One, the fact that the district court has already found clearly that there are four distribution of crack cocaine offenses or four separate predicates, coupled with the fact that Mr. Benton is serving two separate 420 month sentences. You put all those two together. It goes back to my original question. What is the end game for Mr. You know, we're trying to save judicial resources. We wouldn't have had this argument. We're having such fun here. I think when you upload both the fact that the district courts already made this finding about sufficient ACC predicates, coupled with the concurrence sentence doctrine. It does seem to be the district court made those findings. Mr. United States attorney. The district court made those findings without being informed of the Hodge case, which undermines those findings. Your Honor, I would I would direct you back to United States. Your circuit, your honor, just last year made clear that Hodge is limited to just the cases on collateral abuse. So there's no question if this is remanded, it's going to be the same thing. I mean, just courage. Again, counsel counsel. But Hodge, I mean, that's I guess this is consistent with your argument that Hodge is wrong because Hodge itself turns on what you are calling the formality of who has the burden of proof. And who is represented by counsel at what stage of the proceedings for the Hodge court? It was really important that this get done at not on habeas, but at the original sentencing when the burden of proof would be on the government. And we can be sure that counsel will be right. I'm sorry that the defendant will be well represented. So what will be different under Romney when this goes back on remand is that the the the five factor test will be applied with the burden on the government and with the petitioner well represented, given that he has a constitutional right to counsel. And we said in Hodge that that makes all the difference. So I don't understand how you can stand up in front of us and say whatever. It's no big deal without also saying and Hodge was wrong. But now that I think about it, you are saying Hodge was wrong. So it does make a certain amount of sense. Yes, you are. And again, I want to go back to one point that if it wasn't, we would be much have much less an objection of having a remand under Hodge. If Mr. Benton wasn't already serving two separate 400. Well, he says that he thinks he can get First Step Act relief on those or at least that he's eligible. Right. And if that's right, it will then become very important whether this is a 30 year sentence or a 10 year sentence. So I don't know that we have the kind of certainty we would want that this will never make a difference. Yes, your honor, but I would actually like to address it if I may, your honor. It's interesting that for the first time in his reply brief, Mr. Benton raises the First Step Act. Your honor, he has never filed a motion under the First Step Act. The First Step Act was enacted in 2018. It's almost four years later. Mr. Benton has never followed a motion of the First Step Act. That might be a good question for his counsel in reply. He had multiple opportunities to. He could have filed a motion for a First Step Act when he filed his 2255. He could have filed a motion for a First Step Act before he filed this appeal. So it seems like awfully speculative. I just asked the court if he's eligible for relief under the First Step Act. Why? Why didn't he file a motion under it? Well, we appreciate your help in forming our questions. Unless one of my colleagues has any further questions, I think your time is expired. Thank you. Yes, your honor. Hodge sets forth a categorical rule that the district court cannot apply the ACC enhancement based on convictions identified for the first time on collateral review. The government cannot get around that very straightforward holding. The government cites United States versus Romley, but Romley actually supports our position, not the government's. In Romley, which was decided after Hodge, the district court vacated the defendant's ACC sentence based on Johnson. At the de novo resentencing, the government argued that the defendant still qualified as ACC based on predicates it had not identified at the time of the original sentencing. And the district court did eventually apply the ACC enhancement. But under Hodge, the district court had to vacate the defendant's ACC sentence because Hodge sets forth the categorical rule that the ACC sentence cannot stand based on convictions identified for the first time on collateral review. It simply doesn't matter what is going to happen below. But Mr. Benton does have arguments that he would present at a de novo resentencing about why he wouldn't qualify as ACC, and he must be given the opportunity to make them. Concurrent sentence doctrine simply doesn't apply as United States versus Charles makes clear. Just like Mr. Charles, Mr. Benton is eligible for relief under Section 404 of the First Step Act. So as the court has pointed out, the impact of this appeal would very much impact the Section 404 motion because he would be effectively denied meaningful relief if this court did not review. In terms of why Mr. Benton hasn't filed the 404 motion after he filed the appeal in this matter, it's unclear if there would even be jurisdiction after a notice of appeal has divested the district court of jurisdiction. Hodge dictates that this court must vacate the district court's denial of Mr. Benton's 2255 motion and send the case back to the district court for further proceedings. Thank you very much. Thank you. Appreciate your argument. Thank you. Thank you. We will adjourn court. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Diana Gribbon Motz, Robert B. King, Pamela A. Harris